Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 CR 50001 - 2 | **DATE** | 11/12/2002 |
| **CASE TITLE** | United States vs. Frykholm | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Third-party petitioner Cotswold's motion for summary judgment and motion for leave to file brief in excess of 15 pages; United States' motion to dismiss Cotswold's petition

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated on the reverse Memorandum Opinion and Order, third-party petitioner Cotswold's motion for summary judgment is granted and the United States' motion to dismiss Cotswold's petition is granted in part and denied in part. Cotswold's motion for leave to file a reply brief in excess of 15 pages is granted. The United States is to submit within the next 10 days (1) a proposed amended final order of forfeiture, taking into account this court's previous rulings with respect to the petitions of Merritt Dixon III and Cotswold and (2) a written status report regarding the petition of Reeves in light of the court's ruling on the Cotswold petition.

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| X | Notices mailed by judge's staff. | NOV 1 3 2002 | 233 |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 11-12-02 |
| | | | date mailed notice |
| /LC | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

# MEMORANDUM OPINION AND ORDER

On August 31, 2000, Linda Frykholm pleaded guilty in this court to wire fraud and money laundering. After Frykholm's sentencing, the court entered an amended judgment on January 24, 2001, which, among other things, forfeited Frykholm's interests in certain properties, including 1982 North Lake Shore Drive in Delevan, Walworth County, Wisconsin ("1982 Walworth Property"), to the United States. On January 10, 2001, third-party petitioner, Cotswold Trading Co. Ltd. ("Cotswold"), filed a petition under 21 U.S.C. § 853(n) claiming a first and prior interest over the government in the 1982 Walworth Property. Before the court are the government's motion to dismiss Cotswold's petition for lack of standing or failure to state a claim, filed pursuant to Federal Rule of Criminal Procedure 32.2(c)(1)(A), and Cotswold's motion for summary judgment, filed pursuant to Federal Rule of Criminal Procedure 32.2(c)(1)(B) and Federal Rule of Civil Procedure 56.

As Cotswold has clearly abandoned any claim that it has an interest in the 1982 Walworth Property based on § 853(n)(6)(A), the court grants that portion of the government's motion to dismiss. That leaves the main dispute between the parties: whether, under § 853(n)(6)(B), Cotswold was a bona fide purchaser ("BFP") for value of a mortgage Frykholm granted to Cotswold on the 1982 Walworth Property in November 1999, two months before Frykholm was indicted in this case. Subsection (B) requires Cotswold to prove by a preponderance of the evidence that it was a BFP for value and was, at the time it obtained its mortgage interest in the 1982 Walworth Property, "reasonably without cause to believe that the property was subject to forfeiture." 21 U.S.C. § 853(n)(6)(B).

In response to Cotswold's motion for summary judgment on this claim, the government essentially argues questions of fact exist as to whether Cotswold was a BFP of the mortgage because it had knowledge of particular facts concerning its investments with Frykholm that would have put a reasonably prudent person on duty of inquiry, which, if prosecuted with ordinary diligence, would have led to actual notice of Frykholm's fraud and, ultimately, the government's interest in the 1982 Walworth Property. (Although the government cites a Seventh Circuit case applying Indiana law for this proposition, see United States v. LaRosa, 765 F.2d 693, 697 (7th Cir. 1985), Wisconsin law, which is the law to be applied in this case, see United States v. Lee, 232 F.3d 556, 560 (7th Cir. 2000) (claimant's interest in forfeited property determined in reference to the law of the state in which the property is located), cert. denied, 122 S. Ct. 315 (2001), is of like effect. See New Dells Lumber Co. v. Pfiffner, 258 N.W. 375, 378 (Wis. 1935); Spangler v. Kittel, 179 N.W. 758, 761 (Wis. 1920).) Specifically, the government points out the following facts should have acted as "warning flags" to put Cotswold on notice to conduct a further inquiry into Frykholm: (1) the nature and appearance of the investment offerings themselves, which promised 100% returns within a very short period of time (35, 15, and 10 days); (2) Frykholm's failure to pay the profits or return the principal, despite Cotswold's repeated demands to do so; (3) the operation of Frykholm's businesses, such as the use of mail drop boxes for her business addresses; and, perhaps most significant to the government's theory, (4) letters that Cotswold's attorney, in his attempts to get Frykholm to pay up, sent to Frykholm in which he threatened to report her to "the authorities in both Illinois and Switzerland, as well as any other pertinent jurisdiction" and later threatened to turn her into the U.S. Attorney's Office. Based on these facts, had Cotswold conducted "even a cursory inquiry" into Frykholm's background, says the government, it would have soon discovered, among other things, (1) Frykholm's businesses did not in fact exist; (2) Frykholm had twice been convicted of fraud or theft-related offenses in an Illinois state court; (3) press coverage of those convictions and civil actions arising out of her fraudulent activities; (4) the state of Illinois had formally prohibited Frykholm from selling securities in Illinois; and (5) Frykholm bought the 1982 Walworth Property for a total of $2.28 million, paid in cash, all of which was in fact derived from the proceeds of the scheme to defraud that led to her indictment in this case.

In the court's opinion, however, the government expects too much of what a "cursory inquiry," let alone a reasonably diligent one, would produce. First of all, it is undisputed that Cotswold conducted a title search on the 1982 Walworth Property when it first obtained the mortgage in November 1999 – two months before January 2000, when Frykholm was indicted and the government filed its lis pendens notice on the property. That title search indicated a clear title on the property – no liens, encumbrances, or other defects. Although no other mortgages were listed on the title search, the court does not see how Cotswold could have reasonably inferred from this, as the government suggests, that Frykholm paid for the property entirely in cash and the cash was derived from her scheme to defraud. Speaking only of what Cotswold could have uncovered from its due diligence into just the 1982 Walworth Property then, there is simply nothing that would have given Cotswold cause to think the property might be subject to forfeiture by the government.

But, assuming Cotswold truly suspected Frykholm might be criminally responsible for refusing to make good on its investments, as its attorney's letters to her may have indicated (the court of course draws all reasonable inferences in the government's favor, as it is Cotswold's motion for summary judgment), then it is perhaps arguable that Cotswold had a duty to inquire further into not just the 1982 Walworth Property, but into Frykholm's personal background as well. Even so, the court does not see how such a further inquiry, done in a reasonably diligent manner by a private company like Cotswold (as opposed to a full blown criminal investigation by the government), could have uncovered enough information such that Cotswold would have reasonable cause to believe the 1982 Walworth Property was subject to forfeiture – i.e., that Frykholm had specifically purchased the 1982 Walworth Property with the proceeds of her current scheme to defraud. In fact, the government has not introduced any evidence that Cotswold actually knew or reasonably could have learned that Frykholm was defrauding numerous other investors, had been doing so for at least the previous year, and had used their money to buy the 1982 Walworth Property in January 1999 – either on its own or because someone tipped Cotswold off about the FBI investigation going on at the time (November 1999) that eventually led to Frykholm's indictment. While it is certainly true Cotswold may have believed Frykholm was cheating *it*, there is nothing to show it knew she was at the same time engaging in a much more far ranging scheme to defraud *and* had used the proceeds of that scheme to buy the 1982 Walworth Property. Moreover, Frykholm's purchase of that property predated Cotswold's investments with Frykholm, so, even assuming Cotswold suspected Frykholm of defrauding it, Cotswold still would have no reason to believe Frykholm had used *its* illegally obtained money to buy the property. In the end, a reasonably diligent background check into Frykholm[1] may have uncovered a somewhat sketchy past that might have given pause to a prudent investor contemplating an investment with her, but – and this is really the heart of the matter – it is simply unrealistic to expect Cotswold to have discovered that the 1982 Walworth Property in particular was bought with the proceeds of Frykholm's scheme to defraud and, therefore, was subject to forfeiture.

For the reasons stated above, the government's motion to dismiss is granted in part and denied in part and Cotswold's motion for summary judgment is granted.

---

[1] This means something beyond what Cotswold actually did in this case. Before investing with Frykholm, Cotswold contacted the Better Business Bureau of Rockford. After investing with her, it hired a private detective agency to check into her. Neither of these inquiries revealed anything to alert Cotswold about Frykholm.